UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 07-50 (ADM/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Kamil Madfoun Al-Esawi (04) and Musaab Fares Wazwaz (14), | |
| **Defendants.** | |

David J. MacLaughlin, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Richard H. Kyle, Jr., Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for Defendant Kamil Madfoun Al-Esawi

Douglas B. Altman, Altman & Izak, 901 North Third Street, Suite 140, Minneapolis, Minnesota 55401, for Defendant Musaab Fares Wazwaz

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Kamil Madfoun Al-Esawi's Motion to Suppress Eyewitness Identifications (Doc. No. 226), Motion for Severance of Defendants and Offenses (Doc. No. 231), Motion to Strike Superseding Indictment's Reference to Retained Counsel as Surplusage (Doc. No. 233), and Motion for Severance of Offenses (Doc. No. 238);[1] and Defendant Musaab Fares Wazwaz's

---

[1] Defendant Al-Esawi's Motion for Severance of Offenses (Doc. No. 238) was filed after the pretrial motions hearing. Nevertheless, because the motion is similar to his Motion for Severance of Defendants and Offenses (Doc. No. 231), the Court will address the motions simultaneously.

Motion to Suppress Evidence (Doc. No. 218).[2]  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  This case is set for trial before the Honorable Ann D. Montgomery on November 19, 2007.

**I.    BACKGROUND**

A Superseding Indictment was filed in this case on September 18, 2007, charging Defendant Kamil Madfoun Al-Esawi ("Defendant Al-Esawi") with two counts of making a materially false statement to federal agents, and Defendant Musaab Fares Wazwaz ("Defendant Wazwaz") with one count of making a materially false statement to federal agents.  This Court held a pretrial motions hearing on October 11, 2007.  Federal Bureau of Investigation Agent Brian Kinney and Internal Revenue Service Special Agent Timothy Nichols testified at the hearing, and the Court received five exhibits into evidence:

   Gov't Ex. 1:   a subpoena dated January 20, 2006;

   Gov't Ex. 2:   a photographic lineup;

   Gov't Ex. 3:   a photographic lineup;

   Gov't Ex. 4:   a photographic lineup; and

   Gov't Ex. 5:   a copy of Agent Kinney's report dated January 30, 2006.

**II.   FACTS**

The following facts were elicited from the testimony and exhibits introduced at the pretrial motions hearing on October 11, 2007.

On January 20, 2006, Agent Nichols and Agent Kinney went to the Maplewood Tobacco

---

[2] The Court will address the pending non-dispositive pretrial motions in a separate Order.

store ("Maplewood Tobacco") to speak with Defendant Al-Esawi, who worked there as a part-time cashier, about the operation and ownership of the store. Although Defendant Wazwaz was the nominal owner of the store, the agents believed the true owner was Tawfiq Wazwaz. The agents were investigating the ownership of Maplewood Tobacco as part of a larger investigation targeting dozens of tobacco stores owned and operated by the Wazwaz extended family.

Agents Nichols and Kinney arrived at Maplewood Tobacco at approximately 1:30 p.m. and spoke with Defendant Al-Esawi. Approximately one hour into the interview, Tawfiq Wazwaz walked into the store. The agents did not speak with him, as they knew he had retained counsel in another matter, and he left after a short time. At the end of the conversation with Defendant Al-Esawi, the agents asked for permission to search the store. Defendant Al-Esawi replied that he was not the owner of the store and could not consent to a search. He identified the owner as Defendant Wazwaz. At the agents' request, Defendant Al-Esawi attempted to call Defendant Wazwaz on the telephone but failed to reach him. Agent Kinney eventually reached Defendant Wazwaz at another store under investigation, Royal Tobacco. Agent Kinney identified himself and explained why the agents were at Maplewood Tobacco. Defendant Wazwaz confirmed that he was the owner of Maplewood Tobacco, and Agent Kinney asked him to consent to a search of the store. Defendant Wazwaz refused and told Agent Kinney to contact his lawyer, Carl Lindquist. Defendant Wazwaz also said that he would come to Maplewood Tobacco in an hour to "discuss things" with the agents.

The agents ended the interview with Defendant Al-Esawi and left to obtain a subpoena for Maplewood Tobacco's surveillance tape. When the agents returned, Defendant Wazwaz was at the store, and the agents served the subpoena on him. The agents also asked Defendant

Wazwaz for his consent to search the store, and he declined, saying he did not trust anyone, even his mother, in the store's office. Agent Nichols said that he could trust them.

The agents then left the store and drove around the area to investigate which vehicle belonged to Defendant Wazwaz. The agents had no intention of returning to the store but parked across the street to wait for Defendant Wazwaz to leave. While the agents were parked, Defendant Wazwaz called Agent Kinney on his cellular phone. He said he had spoken with his attorney and was giving the agents consent to search the store. He did not impose any limitations on the scope of the search. The agents returned to the store while Defendant Wazwaz was still on the phone. Agent Kinney handed the phone to Defendant Al-Esawi, who spoke with Defendant Wazwaz. After the call ended, Defendant Al-Esawi escorted the agents to the back of the store, where they began to search. The agents tried to open the office door, but it was locked, and the agents asked Defendant Al-Esawi for a key. Defendant Al-Esawi did not have a key, so the agents called Defendant Wazwaz and asked him for a key to the office. Defendant Wazwaz said that he had the only key but was not returning to the store.

The agents continued to search the accessible areas of the store. When Defendant Al-Esawi saw Agent Nichols placing some items into a bag, he called Defendant Wazwaz and handed the phone to the agent. Defendant Wazwaz said he thought the agents were done with the search, to which Agents Nichols replied they were not. Defendant Wazwaz reiterated his consent to the search and told the agents to take whatever they needed. The agents briefly continued to search after the call ended.

On Friday, January 27, 2006, Agents Kinney and Nichols went to Western Bank to interview the bank's employees about Maplewood Tobacco's banking activities. The agents

interviewed three tellers and a manager, separately, in an unoccupied office. During the interviews, the agents showed each employee three different photographic lineups and asked the employee if he or she recognized anyone associated with Maplewood Tobacco. The lineups were comprised of six color photographs of men with similar features, with no writing or markings. Three tellers identified Defendant Al-Esawi as associated with Maplewood Tobacco.

### III.   DISCUSSION

#### A.   Defendant Al-Esawi's Motion to Suppress Eyewitness Identifications

Defendant Al-Esawi moves to suppress the eyewitness identifications made by the Western Bank employees, arguing that the photographic lineups were unnecessarily suggestive. He did not, however, specify how the photographic lineups or the identification procedure were suggestive.

In assessing the constitutionality of a photographic lineup, a court must first determine whether the identification procedure was "impermissibly suggestive" and, if it was, then inquire whether that procedure was nonetheless reliable. United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (internal citations omitted). Here, neither the photographic lineups nor the identification procedure were suggestive in any way. Each lineup consisted of six photographs of men with similar features. There were no markings or writing on the lineups. The agents asked the employees to identify any individuals whom they recognized as associated with Maplewood Tobacco, but the agents did not prompt the employees or suggest a result.

Even assuming the identification procedure was impermissibly suggestive, the identifications were nevertheless reliable. In assessing reliability, courts balance five factors: "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree

of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" Id. at 567 (internal citation omitted). In this case, the tellers recognized Defendant Al-Esawi as having made deposits at the bank on behalf of Maplewood Tobacco. There is no reason to doubt the tellers' degree of attention; their employment as bank tellers necessarily involves paying attention to customers. The tellers expressed no uncertainty in their identifications of Defendant Al-Esawi. The factor pertaining to the accuracy of any prior descriptions does not apply here. Finally, the identifications presumably occurred within a few days to a week of when the tellers had last seen Defendant Al-Esawi transact business at the bank on behalf of Maplewood Tobacco.

In sum, the photographic lineups in this case did not offend Defendant Al-Esawi's due process rights. The identification procedure was not impermissibly suggestive, but even assuming it was, it was nonetheless reliable. Accordingly, Defendant Al-Esawi's motion to suppress the eyewitness identifications should be denied.

**B.     Defendant Al-Esawi's Motion for Severance of Defendants and Offenses and Separate Motion for Severance of Offenses**

Defendant Al-Esawi asks to be tried separately on Counts 1 and 3. He also asks to be tried separately from Defendant Wazwaz. For each request, he does not challenge the propriety of the joinder itself, but asserts that he would be prejudiced by a joint trial.

Generally, "persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989) (citations omitted). Offenses may be joined in an indictment if they are of similar

character, based on the same act, or based on a "common scheme or plan." Fed. R. Crim. P. 8(a). If a defendant's trial rights would be prejudiced by the joinder of either offenses or defendants, he or she may seek severance under Federal Rule of Criminal Procedure 14(a). However, "[t]he presumption against severing properly joined cases is strong. It is not enough that a defendant thinks his chances for acquittal would be better in a separate trial . . . ." United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996) (citations omitted). A defendant should be severed "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Moreover, unless the defendant can show that a jury would be unable to compartmentalize the evidence against him, a general complaint of spillover prejudice is not a sufficient basis for severance. United States v. O'Meara, 895 F.2d 1216, 1219 (8th Cir. 1990). Finally, any risk of prejudice "is best cured by careful and thorough jury instructions," not severance. Zafiro, 506 U.S. at 540-41.

The Court begins with Defendant Al-Esawi's request to sever the counts against him. Count 1 charges Defendant Al-Esawi with lying to federal agents during an interview at Maplewood Tobacco on January 20, 2006, when he said that Defendant Wazwaz was the owner of the store, even though he knew that Tawfiq Wazwaz was the actual owner. Count 3 charges Defendant Al-Esawi with lying to federal agents during an immunized proffer session on February 15, 2006, when he said that an unindicted co-conspirator had hired him to work at Maplewood Tobacco, even though he knew that Tawfiq Wazwaz hired him. Defendant Al-Esawi claims that Counts 1 and 3 must be severed because the statement charged in Count 3 was provided under a grant of immunity and thus will not be admissible in the Government's

prosecution of Count 1.

In its response to the motion, the Government concedes that the proffer agreement precludes the use of the immunized testimony to prove that Defendant Al-Esawi lied during the earlier interview on January 20, 2006. The Government accordingly represents that it will not seek to offer Defendant's immunized statement to prove the falsity of the earlier statement.

The question for the purpose of severance under Rule 14(a) is whether Defendant Al-Esawi will be prejudiced in the prosecution of Count 1 by the introduction of the immunized statement in the prosecution of Count 3. The Court concludes no such prejudice exists because the immunized statement simply is not probative of the falsity of the other statement. To prove Count 1, the Government intends to present evidence that Tawfiq Wazwaz owned and controlled Maplewood Tobacco and that Defendant Al-Esawi knew Tawfiq Wazwaz was the true owner of the store. The immunized statement relates to neither of these facts.

Furthermore, even if Defendant Al-Esawi had shown a risk of prejudice, he has not demonstrated that a jury would be unable to separate the evidence related to each of the two counts, both of which are relatively simple and straightforward, if given an appropriate limiting instruction. Consequently, the Court concludes that the counts should not be severed.[3]

---

[3] An additional basis for denying the motion for severance of counts exists in the proffer agreement itself. The parties agreed that "that in any case prosecuted by the United States Attorney's Office, . . . the government will not offer in its case-in-chief . . . any oral statements made by [Defendant Al-Esawi] at the meeting, except in a prosecution for false statements, obstruction of justice, or perjury." (Def. Mot. Sever. Offenses Ex. A ¶ 2) (emphasis added). The Government intends to offer the statement made during the proffer session in prosecuting a false statement, which is expressly permitted by the agreement. The agreement does not limit the use of the immunized false statement to the prosecution of only that statement; the language seems to permit the use of the false statement in any prosecution of a false statement. In addition, the agreement expressly permits the Government to use statements made during the proffer session "for the purpose of cross-examination . . . or to rebut any evidence offered" at a trial. (Id.

Defendant Al-Esawi also seeks to sever his trial from that of Defendant Wazwaz, claiming that he would be prejudiced by a joint trial because Defendant Wazwaz might offer exculpatory testimony in a separate trial. Specifically, Defendant Al-Esawi believes that Defendant Wazwaz would testify that Defendant Wazwaz told federal agents he was the owner of Maplewood Tobacco, not Tawfiq Wazwaz. According to Defendant Al-Esawi, this testimony would corroborate his statement to federal agents that he believed Defendant Wazwaz was the true owner.

To obtain a separate trial based on an asserted need to call a co-defendant as a witness, the defendant must show "that it is likely his co-defendant actually would have testified and that this testimony would have been exculpatory." Delpit, 94 F.3d at 1144 (citing United States v. Anthony, 565 F.2d 533, 538 (8th Cir. 1977)). In this case, Defendant Al-Esawi has not shown that Defendant Wazwaz would likely testify at a separate trial. There is no proffer of testimony from Defendant Wazwaz or his counsel. Cf. United States v. Mickelson, 378 F.3d 810, 818 (8th Cir. 2004) (co-defendant's lawyer told the court that his client was willing to testify and presented the substance of the testimony); United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993) (same). Rather, Defendant Al-Esawi offers only hopeful speculation. Indeed, Defendant Wazwaz's testimony at a separate trial of Defendant Al-Esawi would be most unlikely, given that Defendant Wazwaz would have to waive his Fifth Amendment right to remain silent in order to testify. In addition, the Government has represented that if the trials were severed, it would prosecute Defendant Al-Esawi first. This further reduces any likelihood that Defendant Wazwaz

---

¶ 3(b).) These exceptions expressly permit the use of Defendant Al-Esawi's immunized statements under certain circumstances, and he may not assert prejudice in those situations.

would testify at Defendant Al-Esawi's trial and subject himself to cross-examination before his own trial. Because Defendant Al-Esawi has not shown that Defendant Wazwaz would likely testify at a separate trial, the trial of Defendants should not be severed.

> C. **Defendant Al-Esawi's Motion to Strike Superseding Indictment's Reference to Retained Counsel as Surplusage**

Defendant Al-Esawi asks to strike a reference to his "retained counsel" in paragraph 12 of the Superseding Indictment. The Government does not object to removing the reference, and the Court recommends that the motion be granted.

> D. **Defendant Wazwaz's Motion to Suppress Evidence**

Defendant Wazwaz moves to suppress the evidence seized from Maplewood Tobacco. In his original motion, he failed to set forth any legal basis for his motion. At the motion hearing, he suggested that the search was improper because his consent was involuntarily given, the search exceeded the scope of his consent, and he revoked his consent. Although Defendant Wazwaz requested and received an opportunity to brief these issues after the hearing, he informed the Court in a letter dated October 16, 2007, that he had "decided to submit the issue of the legality of the consent search of Mr. Wazwaz's business premises on the pleadings and the testimony at the motions hearing . . . ." (Altman Letter, Oct. 16, 2007, at 1.)

Police officers may search an area without a warrant "if they obtain a voluntary consent from someone possessing adequate authority over the area." United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (citing United States v. Matlock, 415 U.S. 164, 171 & n.7 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). Whether consent was voluntarily given depends on the totality of the circumstances, including the characteristics of the person and the

context of the encounter. Id. (citing Bustamonte, 412 U.S. at 226). Regarding the characteristics of the individual, a court must consider a person's age, intelligence, and education; whether he was under the influence of drugs or intoxicated; whether he was advised of his Miranda rights; and whether he was aware of legal protections because of previous arrests. Id. at 381 (citations omitted). In examining the context in which the consent was obtained, a court should consider the length of time that the person was detained and questioned; whether the person was threatened, intimidated, or punished; whether the police made promises or misrepresentations on which the individual relied; the person's custodial status; whether the encounter was in a public or a secluded place; and whether the person objected to the search or stood by silently. Id. (citations omitted). A court should not mechanically apply the factors, id., and the question is not whether Defendant Wazwaz "consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented," see United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).

Upon examination of the relevant factors, the Court concludes that a reasonable person would believe that Defendant Wazwaz voluntarily consented to the search of Maplewood Tobacco. Defendant Wazwaz is presumably of adequate age, intelligence, and educational level; nothing in the record suggests otherwise. There is similarly no evidence that he was under the influence of drugs or alcohol, or that he had been arrested previously. The Court will presume, however, that Defendant Wazwaz knew of his right to refuse consent, as he told the agents to contact his lawyer, and he had refused consent twice before.

At the motions hearing, Defendant Wazwaz's counsel questioned the agents at length about their general practice in using consent-to-search forms and why they did not ask Defendant

11

Wazwaz to sign such a form. The agents testified that they use a written consent-to-search form when possible. But here, Defendant Wazwaz gave verbal consent over the telephone. The agents did not personally encounter him when they returned to the store, and therefore, it was not possible to have him sign a written consent form. In these circumstances, the lack of a written consent-to-search form is irrelevant.

The agents were not required to advise Defendant Wazwaz of his <u>Miranda</u> rights because he gave his consent to search the store during a telephone call. He was obviously not in custody, and <u>Miranda</u> therefore did not apply. Moreover, Defendant Wazwaz himself initiated the telephone call with the agents, after he had spoken with his lawyer about the situation, and he volunteered his consent without being asked. There were no threats, intimidation, coercion, promises, or misrepresentations, and Defendant Wazwaz was not detained. During the search, the agents called Defendant Wazwaz to ask for a key, and he said nothing during the conversation to indicate his lack of consent. He said only that he had a key but was not returning to the store. Viewing the totality of the circumstances, this is a clear-cut case of voluntary consent.

As to whether the agents exceeded the scope of the consent, the record is clear that Defendant Wazwaz did not impose any limitations on the scope of the search. Similarly, the record lacks any evidence that Defendant Wazwaz revoked his consent. To the contrary, when Defendant Al-Esawi called Defendant Wazwaz during the course of the search, Defendant Wazwaz reiterated his consent and told the agents to take whatever they needed.

In conclusion, Defendant Wazwaz's consent to search Maplewood Tobacco was voluntary and without limitation, and he never revoked his consent. Accordingly, his motion to

suppress evidence should be denied.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Kamil Al-Esawi's Motion to Suppress Eyewitness Identifications (Doc. No. 226) be **DENIED**;

2. Defendant Kamil Al-Esawi's Motion for Severance of Defendants and Offenses (Doc. No. 231) be **DENIED**;

3. Defendant Kamil Al-Esawi's Motion to Strike Superseding Indictment's Reference to Retained Counsel as Surplusage (Doc. No. 233) be **GRANTED**;

4. Defendant Kamil Al-Esawi's Motion for Severance of Offenses (Doc. No. 238) be **DENIED**; and

5. Defendant Musaab Wazwaz's Motion to Suppress Evidence (Doc. No. 218) be **DENIED**.

Dated: October 31, 2007

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 14, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.